## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NANCY THOMPSON, | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMMAND ALKON INC., | : | NO. 22-344 |
| *Defendant* | : | |

### MEMORANDUM

PRATTER, J.                                                                                    MAY 22, 2023

Linda Thompson was formerly employed by Command Alkon, Inc., where she held the role of Office Manager and Accountant of Libra Systems, Inc., a wholly owned subsidiary of Command Alkon. Both parties filed motions for summary judgment, with Command Alkon asserting, *inter alia*, that Ms. Thompson's state law claims are preempted by the Employee Retirement Income Security Act ("ERISA") of 1974, as amended, 29 U.S.C. § 1001, *et seq*. For the following reasons, Command Alkon's motion for summary judgment is granted in part, only as to the issue of preemption, and the parties shall provide supplemental briefing on the application of ERISA to this litigation.

### BACKGROUND

Libra Systems, Inc. was a family-run, 35-employee business. Nancy Thompson worked at Libra, with a role "like office manager – controller." Pl.'s Mot. for Summ. J. ¶ 6.

The president of Command Alkon, Inc. contacted Libra to state his interest in purchasing the smaller company, and the companies agreed to a purchase of Libra by Command Alkon in November 2020. In connection with the sale of the company, Libra's co-owners insisted that Ms. Thompson have an employment contract, given her importance to Libra. The contract, executed on November 18, 2020, was between Libra, identified as the "Company," and Ms. Thompson, and

1

in it, Libra agreed to continue her employment for five years unless the agreement was terminated earlier under circumstances laid out in the agreement. Libra was already a wholly owned subsidiary of Command Alkon at the time the employment agreement was executed. The rights and interests under the agreement were assigned to Command Alkon, of which Ms. Thompson became an employee. The employment agreement had as an attachment an "Employee Confidentiality, Assignment of Inventions, Non-Competition and Non-Solicitation Agreement" (the "NDA"), through which Ms. Thompson agreed not to work for any competitor of Libra or its affiliates for a period after her employment ended. Ex. 8. to Pl.'s Mot. for Sum. J. at A-3.

Paragraph 5.1(b) of Ms. Thompson's employment agreement defines the circumstances under which Ms. Thompson's job could be terminated for cause, which included (1) Ms. Thompson's "arbitrary, unreasonable or willful failure to perform" her duties under the agreement; (2) her "gross negligence or willful misconduct"; (3) her "commission of an act constituting fraud, embezzlement, breach of any fiduciary duty . . . or other material dishonesty"; (4) Ms. Thompson's "conviction of . . . a felony or any other crime involving dishonesty or moral turpitude" that would reflect poorly on Libra; (5) "substance abuse"; or (6) her "breach of [her] obligations under, or a breach of any representation or warranty" made by Ms. Thompson in the agreement or in her NDA. Ex. 8 to Pl.'s Mot. for Summ. J. ¶ 5.1(b).

Paragraph 5.1(a) of Ms. Thompson's agreement also describes a scenario in which she could be terminated without cause, in which case Ms. Thompson would be eligible for severance payments, payable "in increments according to the Company's normal payroll schedule" for the remainder of her five-year employment term, conditioned upon her continuing compliance with the NDA and her employment agreement along with her execution and delivery of a waiver and release of claims related to her employment with Libra. Ex. 8. to Pl.'s Mot. for Summ. J. ¶ 5.1(a).

If Ms. Thompson resigned for "good reason," which as defined in the agreement includes "a material and unreasonable diminution in [her] duties, authority or responsibility" without her consent, she would be entitled to severance pay, so long as she gave notice of the event constituting good reason and provided Command Alkon with a 30-day opportunity to cure. Ex. 8. to Pl.'s Mot. for Summ. J. ¶ 5.2.

Ms. Thompson's agreement also contains language stating that the contract "is intended to be an unfunded top hat plan within the meaning of Sections 201(2), 301(a)(3), and 401(a)(1) of the Employee Retirement Income Security Act of 1974, as amended." Ex. 8. to Pl.'s Mot. for Summ. J. ¶ 19.

On July 19, 2021, Ms. Thompson asserted that she had good reason to terminate her employment with Command Alkon, alleging events that she believed constituted diminution of her duties, and she stated her intention to terminate her employment if the company did not timely cure its breach of the agreement. Command Alkon's in-house counsel responded on August 4, 2021, that the diminution of Ms. Thompson's responsibilities was not material or unreasonable. Ms. Thompson ended her employment with Command Alkon on August 19, 2021. She did not execute a waiver and release of certain claims in favor of Command Alkon, which was a condition of receiving severance payments. Command Alkon did not pay a severance amount to Ms. Thompson, despite her assertions that she is entitled to severance in the amount of $467,424.62.

Ms. Thompson brought two claims in her complaint filed in the Montgomery County Court of Common Pleas: breach of contract (Count I) and a claim under the Pennsylvania Wage Payment and Collection Law ("WPCL") (Count II). Command Alkon removed the case to federal court on the basis of diversity jurisdiction, and Ms. Thompson subsequently filed an Amended Complaint. Ms. Thompson and Command Alkon each filed motions for summary judgment. In its motion,

Command Alkon argues, for the first time in the life of the case, that the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001–1461 ("ERISA"), preempts both claims in the Amended Complaint. The Court heard oral argument, after which the parties requested referral to a magistrate judge for a settlement conference, but that did not ultimately resolve the dispute. Ms. Thompson and Command Alkon now request that the Court rule only on the issue of whether ERISA preempts Ms. Thompson's breach of contract and WPCL claims.

LEGAL STANDARDS

## I.      Summary Judgment Standard

For a court to grant summary judgment, the movant must prove "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To be "material," the fact must have the potential to "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute about that fact to be "genuine," there must be enough evidence such that a reasonable jury could find for the non-movant on that fact. *Id.* "When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The court does not itself "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court looks for "sufficient evidence" on which a reasonable jury could decide for the non-movant. *Id.*

"The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252. Further, the non-moving party must present more than "bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*,

4

676 F.2d 965, 969 (3d Cir. 1982). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II.     ERISA Preemption

The stated policy of ERISA is to "protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, *and ready access to the Federal courts*." 29 U.S.C. § 1001(b) (emphasis added). "[P]ension plan regulation [is] exclusively a federal concern." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981). ERISA broadly preempts "any and all State laws insofar as they . . . relate to any employee benefit plan" described in the statute and not exempt from ERISA. 29 U.S.C. § 1144(a).

### DISCUSSION

Command Alkon argues that Ms. Thompson's claims are preempted by ERISA because the employment agreement "is intended to be an unfunded [so-called] top hat plan within the meaning of Sections 201(2), 301(a)(3), and 401(a)(1) of" ERISA. Ex. 8. to Pl.'s Mot. for Summ. J. ¶ 19. Ms. Thompson contends that despite this language, her employment agreement does not have an administrative scheme and therefore does not qualify as an ERISA plan.

ERISA broadly defines the term "employee benefit plan" to include "any plan, fund, or program which was . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries . . . benefits in the event of sickness, accident, disability,

death or unemployment," or an employer-established plan "to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program . . . results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." 29 U.S.C. §§ 1002(1), 1002(2)(A), 1002(3). "Courts have determined that most, but not all, severance packages qualify as ERISA plans." *Alston v. Atl. Elec. Co.*, 962 F. Supp. 616, 623 (D.N.J. 1997). "[A]n ERISA plan is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Shaver v. Siemens Corp.*, 670 F.3d 462, 475 (3d Cir. 2012) (internal quotation marks omitted).

Here, the employment agreement states that Ms. Thompson, the intended beneficiary, may be paid a formulaic severance amount for a discernible period following a qualifying termination. The agreement clarifies that the plan benefits would be funded by Command Alkon's direct assets, so that Ms. Thompson would "rely solely on the unsecured promise of the Company" and not be entitled to "any specific assets, fund reserve, account, or property of any kind" owned by Command Alkon, and there was a disclosed process for making claims for severance payments. Ex. 8. to Pl.'s Mot. for Summ. J. ¶ 19. Therefore, the circumstances surrounding the employment agreement establish that it fits comfortably in the broad definition of an ERISA plan. *Shaver*, 670 F.3d at 475.

**I.     The Employment Agreement Is an Employee Benefit Plan with an Administrative Scheme**

ERISA preemption is only justified for severance "benefits whose provision by nature requires an ongoing administrative program." *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 11–12 (1987). "[T]he crucial factor in determining whether a 'plan' has been established is whether [the employer has expressed an intention] to provide benefits on a regular and long-term

basis." *Shaver*, 670 F.3d at 478. Courts also consider (1) whether the employer must analyze each employee's particular circumstances in light of the plan's criteria; (2) whether the employer uses managerial discretion; and (3) whether a reasonable employee perceives an ongoing commitment on the part of the employer to provide benefits. *Id.* at 477. A "one-time, lump-sum payment triggered by a single event" does not implicate an administrative scheme, *Fort Halifax,* 482 U.S. at 12, nor do "[s]imple or mechanical determinations." *Shaver,* 670 F.3d at 477.

There is an administrative scheme here. Ms. Thompson's eligibility to collect the severance pay set forth in her employment agreement turned on whether she was terminated for cause or without cause, or whether she resigned with good reason, and her employer exercised managerial discretion in categorizing the circumstances of Ms. Thompson's termination. *See Pane v. RCA Corp.,* 667 F. Supp. 168, 170–71 (D.N.J. 1987), *aff'd*, 868 F.2d 631 (3d Cir. 1989) (finding an ERISA plan where the employer had to make a "separate determination of each individual's eligibility for benefits" and was not "obligated to make a single set of payments to all employees"); *see also Lugara v. Oticon, Inc.*, No. 19-cv-17951, 2020 WL 2767564, at *3 (D.N.J. May 28, 2020) (finding a plan existed where the employer "in its sole discretion[] makes an initial, individualized eligibility determination for each employee, by examining the circumstances of each employee's termination and by assessing whether each employee has met the requisite conditions"). The severance was also to be paid out in regular installments, not a lump sum, over a maximum of five years, and those payments were subject to the fulfillment of certain conditions precedent (including whether Ms. Thompson had given the required notice, Command Alkon failed to cure the breach, and Ms. Thompson's execution of a waiver and release) and her ongoing compliance with both the NDA and her employment agreement. *See, e.g., Kotok v. A360 Media, LLC*, No. 22-cv-4159, 2023 WL 1860595, at *4 (D.N.J. Feb. 9, 2023) (finding ERISA preemption where provision of

severance benefits required an analysis of the reason for termination, compliance with sections of the employment agreement, and whether the former employee obtained employment after termination); *Zgrablich v. Cardone Indus., Inc.*, No. 15-cv-4665, 2016 WL 427360, at *5 (E.D. Pa. Feb. 3, 2016) (finding ERISA preemption where the plaintiff's eligibility to collect benefits turned on type of termination, former employer could stop providing medical coverage if the plaintiff obtained comparable coverage from another employer, and severance benefits could be discontinued in the event of breach of non-compete restrictions); *cf. Coggins v. Keystone Foods, LLC*, 111 F. Supp. 3d 630, 638 (E.D. Pa 2015) (finding no administrative scheme criteria and thus no ERISA preemption where the retirement agreements at issue only provided for a simple continuation of benefits upon retirement and involved no discretion in administering the benefits). Command Alkon was certainly required to do "more than write a check" for Ms. Thompson—indeed, several layers of review over the course of multiple years would have been required to oversee the continuing payments owed to Ms. Thompson had the termination of her employment been found to qualify her for severance. *Fort Halifax*, 482 U.S. at 12. Therefore, Ms. Thompson's employment agreement has an administrative scheme and, hence, constitutes an ERISA plan.

## II.     The Employment Agreement Does Not Fail to Qualify as a Plan Merely Because It Covers Only One Employee

The employment agreement, by its own terms, purports to be a "top hat" plan. Ms. Thompson argues that the agreement cannot qualify as such a plan because it covers only one person—Ms. Thompson herself—and not a select "group" of top management or highly compensated individuals.

A top hat plan is "a defined benefit pension plan that does not require a limit on the amount of compensation that may be recognized." *Zebrowski v. Evonik Degussa Corp. Admin. Comm.*, 578 F. App'x 89, 90–91 (3d Cir. 2014). Top hat plans are (1) "unfunded" and (2) "maintained by

8

an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees."[1] 29 U.S.C. §§ 1101(a)(1), 1051(2), 1081(a)(3); *Sikora v. UPMC*, 876 F.3d 110, 112 (3d Cir. 2017); *In re New Valley Corp.*, 89 F.3d 143, 148 (3d Cir. 1996). Top hat plans vary from other ERISA plans in that "they are exempt from ERISA's vesting, funding, and fiduciary requirements," *Zebrowski*, 578 F. App'x at 91, but remain "subject to ERISA's reporting and disclosure provisions, as well as its administration and enforcement requirements." *Id.* at 91 n.3. Consequently, "'top hat' plans are not exempt from complete preemption by ERISA." *In re New England Mut. Life Ins. Co. Sales Pracs. Litig.*, 324 F. Supp. 2d 288, 309 (D. Mass. 2004); *see also Moore v. Raytheon Corp.*, 314 F. Supp. 2d 658, 663 (N.D. Tex. 2004) ("Because a top hat plan is subject to ERISA's enforcement provisions and is an employee benefit plan within the meaning of ERISA, all state law claims that relate to the plan are preempted.").

The employment agreement here is not precluded from qualifying as a top hat plan because it applies only to Ms. Thompson. Severance agreements that apply only to one employee do not necessarily run afoul of the top hat plan requirements. *See Duggan v. Hobbs*, 99 F.3d 307, 312–13 (9th Cir. 1996) (concluding that a plan qualified as a top hat plan under ERISA where only one employee was covered because he numerically qualified as a "select group" of employees); *cf. Koenig v. Automatic Data Processing*, 156 F. App'x 461, 466–67 (3d Cir. 2005) (noting prior Third Circuit holdings that top hat plans are more akin to unilateral contracts than trusts and acknowledging the holding of the Ninth Circuit Court of Appeals in *Duggan* as to a single-employee top hat plan). More generally, several appellate courts have reasoned that

---

[1]     Command Alkon asserts that the plan at issue is unfunded because "it is paid from Command Alkon's direct assets and no fund or trust has been created to fund the benefits." Def.'s Mot. for Summ J. at 4. Ms. Thompson does not challenge this assertion.

contracts with one employee can constitute a plan for ERISA purposes, provided that the "administrative scheme" hurdle has been cleared. *See Minnis v. Baldwin Bros. Inc.*, 150 F. App'x 118, 120 (3d Cir. 2005); *Coggins*, 111 F. Supp. 3d at 638 ("*Minnis* is consistent with more extensive opinions from other circuits that recognize a promise to a single employee can constitute a plan . . . *if* it satisfies the 'administrative scheme' criteria . . . ."); *Cvelbar v. CBI Ill. Inc.*, 106 F.3d 1368, 1376 (7th Cir. 1997), *abrogated on other grounds by Int'l Union of Operating Eng'rs, Loc. 150, AFL-CIO v. Rabine*, 161 F.3d 427 (7th Cir. 1998) ("[A]s long as the benefits program meets the other requirements of an ERISA plan—namely, an ongoing administrative scheme and reasonably ascertainable terms—the program does not fall outside the ambit of ERISA merely because it covers only a single employee."); *Biggers v. Wittek Indus., Inc.*, 4 F.3d 291, 297 (4th Cir. 1993) (finding that a claim for breach of individual contract relating to entitlement to severance pay falls under ERISA); *Williams v. Wright*, 927 F.2d 1540, 1545 (11th Cir. 1991) (finding that "nothing in the ERISA legislation point[s] to the exclusion of plans covering only a single employee" and noting that "Department of Labor regulations refer to a plan covering *one* or more employees as within ERISA"). *But see Dakota, Minn. & E. R.R. Corp. v. Schieffer*, 648 F.3d 935, 938 (8th Cir. 2011) ("Congress has never preempted state laws that regulate and enforce individual employment contracts between employers and their executives."). Because, as discussed above, the employment agreement necessitates an administrative scheme, the Court finds that the employment agreement here can constitute a top hat plan even if the beneficiary of the plan is a select group of one—Ms. Thompson.

### III.   The State Law Claims Are Preempted by ERISA

Having found that the employment agreement is a "plan" for purposes of ERISA because it requires an administrative scheme, the Court turns to the question of whether ERISA preempts Ms. Thompson's state law claims.

ERISA "supersede[s] any and all State laws insofar as they . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has interpreted ERISA's broad language to find that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983). The Court need not determine whether Pennsylvania law is consonant or dissonant with ERISA because "[t]he pre-emption provision was intended to displace all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985); *see also Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 226 (3d Cir. 2020) (noting that "not only state statutes, but also common law causes of actions" are preempted under ERISA).

Ms. Thompson's breach of contract and WPCL claims are both premised on the argument that Command Alkon denied her severance benefits owed under her employment agreement. "Claims involving denial of benefits or improper processing of benefits require interpreting what benefits are due under the plan [and] explicitly require reference to the plan and what it covers, [so] they are expressly preempted." *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 296 (3d Cir. 2014); *see also Kotok*, 2023 WL 1860595, at *4–*5 (finding express preemption under 29 U.S.C. § 1144(a) as to breach of contract claim and the New Jersey Wage Collection Law); *Cope v. Hudson's Bay Co. Severance Pay Plan for US Emps. Amended*, No. 20-cv-6490, 2023 WL 174960, at *9 (E.D. Pa. Jan. 12, 2023) ("To determine the amount of any recovery under the WPCL, the Court would need to review the [plan] and the provisions of ERISA. Therefore, Plaintiff's WPCL claim 'relates to' ERISA and is preempted."). Ms. Thompson's claims require a

review of the plan as set forth in her employment agreement, so ERISA preempts her two state law claims.[2]

IV.      **Leave to Submit an Additional Joint Status Update**

This case was removed in early 2022 on the basis of diversity jurisdiction. Ms. Thompson unsuccessfully sought remand at that time, arguing that Command Akon's wholly owned subsidiary Libra, then a defendant, destroyed diversity. Although Ms. Thompson amended her complaint, she did not plead ERISA causes of action. Command Alkon, which did not file a motion to dismiss, did not raise the issue of ERISA preemption  before it filed its motion for summary judgment.

Where a party asks the Court to "convert . . . state law claims to ERISA claims at some later point in the litigation, . . .  it is not clear whether the preempted claims should be dismissed with leave to amend to explicitly state an ERISA claim or whether the state law claims should simply be converted by the court into ERISA claims." *Haase v. Metro. Life Ins. Co.*, 198 F. Supp. 3d 412, 425–26 (E.D. Pa. 2016). In its motion for summary judgment, Command Alkon does not clarify whether it seeks dismissal of the state law claims or whether it instead seeks to recharacterize those claims as arising under ERISA. Ms. Thompson, on the other hand, argues that if her employment agreement constitutes an ERISA plan, the Court should analyze whether Command Alkon is liable in the same way it would analyze liability in a breach of contract claim.

To put it mildly, the Court is dubious that it would be proper, under the Federal Rules of Civil Procedure or in light of the federal statute at issue here, to proceed with this case without first requiring Ms. Thompson to amend her complaint to assert her claims under ERISA, even if Command Alkon arguably engaged in dilatory practices by not raising the ERISA preemption

---

[2]      Ms. Thompson concedes that, if her agreement constitutes an ERISA plan, her claim for additional liquidated damages under the WPCL is preempted.

issue prior to the summary judgment stage—for example, at the time of removal. *Haase*, 198 F.
Supp. 3d at 426 (finding that "the elements of the state law causes of action [including breach of
contract] alleged in [the] Complaint are not equivalent to the elements of ERISA claims for the
recovery of benefits due under the plan" and suggesting that permitting conversion at the summary
judgment stage "would result in an end run around the pleading requirements of Rule 8(a)(2)").
Indeed, while Ms. Thompson apparently suggests the Court can proceed to rule on the remainder
of the issues present in the motions for summary judgment by applying state common law contract
interpretation principles without requiring any repleading, she simultaneously admits that "an
ERISA plan may have different rules of construction than a contract," particularly on the issue of
judicial deference to actions taken by a plan administrator. Pl.'s Mem. in Opp. to Def.'s Mot. for
Summ. J. at 12. She also implies, without offering any full briefing, that Command Alkon has
failed to comply with the requirements of plan claim procedure set forth in the regulations
promulgated under ERISA. These contradictions reinforce the conclusion of the Third Circuit
Court of Appeals that

> [i]t is one thing to acknowledge that contract principles apply in ERISA cases.
> Clearly, they do. Generally, "breach of contract principles, applied as a matter of
> federal law, govern" claims for benefits due under an ERISA plan. However, it is
> quite another to say that an employee's severance benefit can be grounded in, and
> enforceable based on, a unilateral contract outside of ERISA's remedial scheme.
> Although this approach is intuitively appealing, and seemingly appropriate in this
> complex area, we conclude that it is inconsistent with the basic framework of
> ERISA and, therefore, cannot be.

*Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 572–73 (3d Cir. 2006) (internal citations omitted).
The Court will not proceed to rule on the remainder of the motions for summary judgment by
hazarding guesses as to what each party's arguments would have, or should have, been, had they
earlier been converted from state law claims to claims under ERISA's notoriously complicated
and comprehensive statutory scheme.

In light of the conclusion that ERISA does preempt Ms. Thompson's state law claims, the Court will permit Ms. Thompson and Command Alkon to submit a joint status update to the Court that details the parties' views on the appropriate path forward in this litigation, and particularly on the issue of whether Ms. Thompson should be granted leave to amend her complaint to allege her claims under ERISA. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) ("[A] district court must permit a curative amendment, unless an amendment would be inequitable or futile.").

## CONCLUSION

For the foregoing reasons, Command Alkon's Motion for Summary Judgment is granted in part only as to the issue of ERISA preemption of Ms. Thompson's claims. Ms. Thompson and Command Alkon shall provide to the Court a joint status update as to their proposals on how to proceed with this case. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE