IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NANCY E. THOMPSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMMAND ALKON INCORPORATED, et al. | : | NO. 22-344 |

MEMORANDUM

Bartle, J. October 28, 2026

Plaintiff Nancy E. Thompson has sued defendants Command Alkon Incorporated ("Command Alkon") and the Nancy Thompson Employment Agreement Welfare Benefit Plan ("Command Alkon Plan"). Plaintiff resigned from her employment with Command Alkon and avers she is owed severance payments under the terms of an Employment Agreement ("Agreement"). The Agreement is a "top hat" plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA").[1] 29 U.S.C § 1001 et seq. Under

---

1. This case was originally assigned to my colleague, the late Judge Gene E. K. Pratter. She ruled that the Agreement is a top hat plan governed by ERISA. Thompson v. Command Alkon Inc., No. 22-cv-344, 2023 WL 3594178, at *5 (E.D. Pa. May 22, 2023). A top hat plan is a benefit plan usually intended to provide deferred compensation to a small group of high-ranking employees. 29 U.S.C §§ 1101(a)(1), 1051(2), 1081(a)(3); Sikora v. UPMC, 876 F.3d 110, 112 (3d Cir. 2017). Top hat plans are governed by ERISA but are unique from standard ERISA plans because they are exempt from ERISA's "vesting, funding, and fiduciary requirements." Zebrowski v. Evonik Degussa Corp. Admin. Comm., 578 F.App'x 89, 90-91 (3d. Cir. 2014).

the Agreement, if Plaintiff resigns for good cause, she is entitled to severance payments.

Count I of the Second Amended Complaint is directed against the Command Alkon Plan and seeks severance payments pursuant to 29 U.S.C §1132(a)(1)(B). Count II is directed against Command Alkon and seeks equitable relief to enforce the terms of the Agreement pursuant to 29 U.S.C §1132(a)(3)(B)(ii).

Before the court are cross-motions for summary judgment.[2]

I

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). The court views the facts and draws all inferences in

2. Upon the death of Judge Pratter in 2024, this action was reassigned to Judge R. Barclay Surrick. It was transferred to the docket of the undersigned in August 2026.

favor of the nonmoving party. See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted when there is insufficient evidence in the record for a reasonable factfinder to find for the nonmovant. See Anderson, 477 U.S. at 252. "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." Id. In addition, Rule 56(e)(2) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).

II

The following facts are undisputed.

Plaintiff was employed as the Office Manager and Controller of Libra Systems, Inc. ("Libra"). Defendant Command Alkon Incorporated acquired Libra by way of an equity purchase agreement on November 18, 2020. In connection with the sale of the company, Libra co-owners David and Ken Cardy insisted that Plaintiff have an employment contract. Plaintiff and Libra entered into a written Agreement on November 18, 2020. The signatories were plaintiff, as employee, and Emily Branum as the

"authorized person" for the employer Libra Systems, Inc. Both sides were represented by counsel. The parties have stipulated that all rights and interests of Libra under the Agreement have been assigned to Command Alkon. Order, ECF Doc. # 22; see also Agreement § 9, ECF Doc. # 95-4.

The Agreement provides that the "Company" will continue employing plaintiff "upon the terms and subject to the conditions set forth" in the Agreement for five years as the "Office Manager and Accountant of the Company." Agreement §§ 1, 2, ECF Doc. 95-4. It further states that the "Company" means Libra but that as of its effective date, November 18, 2020, "the Company is a wholly-owned subsidiary of Command Alkon Incorporated." Agreement, ECF Doc. # 95-4, at 2. The Agreement specifies that notwithstanding anything to the contrary it is intended to be an "unfunded top hat plan within the meaning of Sections 201(2), 301(a)(3), and 401(a)(1) of . . . ERISA." Agreement § 19, ECF Doc. # 95-4.

Under the Agreement, plaintiff is allowed to resign at any time and for any reason. If plaintiff resigns for "good reason," plaintiff would be entitled to severance payments for the remainder of her five year employment term paid out at regular intervals. "Good reason" includes "a material and unreasonable diminution in [her] duties, authority, or

responsibility" without her consent. Agreement § 5.2, ECF Doc. # 95-4. The severance payments are conditioned on the plaintiff providing the company with at least 30 days' written notice of the good reason for resignation, during which time the company would have the opportunity to cure the issues.

The Agreement, in the section which describes it as a top hat plan under ERISA, states that "[a]ny claim for payment or benefit under this Agreement related to Severance Payments shall be governed by the Claims Review and Appeal Procedures set forth in Exhibit C." Agreement § 19, ECF Doc. # 95-4 (emphasis in original). Exhibit C, which was attached to the agreement, provides that if a claim for benefits is denied, the company shall notify plaintiff in writing of the denial within 90 days. It then states:

> "In the event a claim for benefits is denied . . . the Applicant . . . may appeal the denial to the Plan Administrator within 60 days of the receipt of written notice of the denial . . . In pursuing such appeal the Applicant . . . may: (i) request in writing that the Plan Administrator review the denial, (ii) review pertinent documents; and (iii) submit issues and comments in writing."

Agreement Exhibit C, ECF Doc. # 99-2. The Company then has 60 days to review the appeal and notify plaintiff in writing of its decision, but it could extend the time to decide the matter by

another 60 days. If the administrative appeal results in the denial of benefits, plaintiff must file a lawsuit within 90 days thereafter. Plaintiff agrees that she was aware of these provisions of Exhibit C when she signed the Agreement.

On July 19, 2021, about eight months after the Agreement was signed, plaintiff sent a letter to the Chief Executive Officer and Chief Legal Officer of Command Alkon submitting notice of "good reason" for her resignation from Libra as Officer Manager and Accountant. Plaintiff explained in detail why in her view there was a "material and unreasonable diminution of [her] duties, responsibilities and the authority [her] position once encompassed, without [her] consent." July 19 Letter, ECF Doc. # 95-4 at 18. She ended the letter asking the recipients if they thought there was "any opportunity for a cure, and if not please give [her] a call to discuss an official end date, transition of duties, and payment of severance and PTO." July 19 Letter, ECF Doc. # 95-4 at 22.

On August 4, 2021, Wendy Davis, Associate General Counsel for Command Alkon, replied by letter to plaintiff. It denied plaintiff's claim for benefits and "disagree[d] that there has been a material and unreasonable diminution in [plaintiff's] duties, authority, or responsibility under the agreement". August 4 Letter, ECF Doc. # 95-5 at 3. It set

forth specific reasons for defendant's position. It also stated that if plaintiff wished to "rescind [her] letter of resignation or discuss [her] job responsibilities," she should reach out to the Chief Executive Officer or Director of People on or before August 10, 2021 so that a conversation could be scheduled on or before August 13, 2021. August 4 Letter, ECF Doc. # 95-5 at 4.

On August 19, 2021, plaintiff sent the Chief Executive Officer of Command Alkon an email that she was "moving forward with [her] resignation and departure." August 19 Email, ECF Doc. # 103-9 at 16. She noted that she "will be seeking legal advice regarding the verbal severance offer." August 19 Email, ECF Doc. # 103-9 at 16.

Two days later, on August 21, 2021, plaintiff's counsel sent Wendy Davis a letter explaining that he had been retained by plaintiff in connection with her departure from Libra. The letter reiterated that there was a diminution of plaintiff's job responsibilities and that defendant's stance to the contrary was not tenable. It further pointed out that Pennsylvania has a "robust wage payment law," that plaintiff was entitled to $467,726, and that plaintiff "will be sure to pursue her remedies" under the law "[u]nless there is law, or some important facts, of which [he is] unaware". August 21 Letter, ECF Doc. # 99-2 at 3. It closed with: "Please let me know if

your client(s) would like to modify their position about payment within the next two weeks." August 21 Letter, ECF Doc. # 99-2 at 3.

On August 26, 2021, Wendy Davis by letter accepted plaintiff's August 19 resignation and reaffirmed defendant's position that there would be no severance payments. The letter also noted that Command Alkon had not offered plaintiff any verbal severance package.

On October 5, 2021, Wendy Davis responded to the letter of plaintiff's counsel. The letter again expressed disagreement that there had been a material and unreasonable diminution in plaintiff's duties, authority, or responsibility. The defendant signified that it will vigorously defend any claim brought by plaintiff.

Plaintiff filed a lawsuit against Command Alkon and Libra on December 21, 2021 in the Court of Common Pleas of Montgomery County. She pleaded breach of contract and Pennsylvania Wage Payment and Collection Law claims. Command Alkon removed the case to this court on the basis of diversity of citizenship.[3] Command Alkon pleaded ERISA preemption as an affirmative defense in its answer to the complaint.

---

3. Plaintiff and Command Alkon then stipulated that defendant Libra Systems, Inc. would be removed from the case since Libra

Both parties, after discovery, filed motions for summary judgment. Judge Pratter granted in part the defendant's motion for summary judgment and held that ERISA preempted the state law claims. Thompson v. Command Alkon Inc., No. 22-cv-344, 2023 WL 3594178 (E.D. Pa. May 22, 2023). Plaintiff filed a second amended complaint with two ERISA claims, after which both parties filed the pending motions for summary judgment.

III

Defendant first argues that it is entitled to summary judgment because plaintiff did not exhaust her administrative remedies as required in the Agreement, an ERISA top hat plan. As previously noted, Exhibit C explains the plan's appeal procedure:

> "In the event a claim for benefits is denied . . . the Applicant . . . may appeal the denial to the Plan Administrator within 60 days of the receipt of written notice of the denial . . . In pursuing such appeal the Applicant . . . may: (i) request in writing that the Plan Administrator review the denial, (ii) review pertinent documents; and (iii) submit issues and comments in writing."

Agreement Exhibit C, ECF Doc. # 99-2.

---

delivered and assigned the rights and interest under the employment Agreement to Command Alkon. Judge Pratter dismissed the case against Libra on April 13, 2022. Order, ECF Doc. # 22.

Under this Circuit's precedents, a plaintiff generally must exhaust her administrative remedies for ERISA benefits prior to bringing a civil action. D'Amico v. CBS Corp., 297 F.3d 287, 290-91 (3d Cir. 2002); Harrow v. Prudential Ins. Co. of America, 279 F.3d 244, 249 (3d Cir. 2002). In Harrow, the Court explained that it requires "exhaustion of administrative remedies 'to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned.'" 279 F.3d at 249 (quoting Amato v. Bernard, 618 F.2d 559, 567 (9th Cir. 1980)).

A plaintiff need not exhaust administrative remedies when the claim is to assert rights established by ERISA rather than to enforce the benefits of a plan or if it would be futile to exhaust administrative procedures. See D'Amico 297 F.3d at 291; Harrow 279 F.3d at 249-50. Here, these exceptions do not apply. The claims seek to obtain the benefits of a plan, and plaintiff does not argue that exhausting administrative remedies would be futile.

Defendant denied plaintiff's claim for benefits on August 4, 2021. Plaintiff had 60 days after receipt of the Command Alkon's denial to file her administrative appeal.

Defendant maintains that plaintiff never appealed the denial of the claim for benefits and instead immediately filed the lawsuit for breach of contract and claims under the Pennsylvania Wage Payment and Collection Law. The August 21, 2021 letter from plaintiff's counsel does not qualify as an appeal, defendant argues, because it did not contain any of the listed components of an appeal described in Exhibit C of the Agreement: "(i) request in writing that the Plan Administrator review the denial, (ii) review pertinent documents; and (iii) submit issues and comments in writing." Agreement Exhibit C, ECF Doc. # 99-2.

Plaintiff first counters that defendant failed to give plaintiff notice of the appeal procedures in its August 4, 2021 notification denying plaintiff's claim and failed to do so in any subsequent correspondence. As a result, plaintiff maintains that any requirement to exhaust administrative remedies is excused. Exhibit C states that if Command Alkon denies a claim for benefits, it shall notify plaintiff in writing, and that notice shall include:

> "(a) the specific reasons for the denial; (b) specific references to the pertinent provisions of this Agreement on which the denial is based; (c) a description of any additional material or information necessary for the applicant to perfect the claim and an explanation of why such material or information is necessary; and (d) <u>an explanation of this Agreement's claim review procedures</u>."

Agreement Exhibit C, ECF Doc. # 99-2 (emphasis added).

In addition to the terms of the Agreement, the ERISA regulation in 29 C.F.R. § 2560.503-1(g)(1)(iv) states that a notification of a denial of benefits shall set forth a "description of the plan's review procedures and the time limits applicable to such procedures." 29 C.F.R. § 2560.503-1(l)(1), with an exception not relevant here, further provides:

> [I]n the case of the failure of a plan to . . . follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

See Campbell v. Sussex Cnty. Fed. Credit Union, 602 F. App'x 71, 75 (3d Cir. 2015).

Plaintiff relies on two decisions of our Court of Appeals to support her position that she was not required to exhaust any administrative appeal before bringing her lawsuit for ERISA benefits. Mirza v. Ins. Admin. Of Am., Inc., 800 F.3d 129 (3d Cir. 2015); Epright v. Environmental Res. Mgm., Inc., 81 F.3d 335 (3d Cir. 1996).

In Epright, plaintiff Epright brought an action alleging improper denial of medical benefits by his former employer in violation of ERISA. 81 F.3d at 337. The Plan provided for an administrative appeal within 120 days after the initial denial. Id. at 339. Epright appealed but out of time. Id. His employer denied his appeal both on the merits and as untimely. Id. It was undisputed that the employer's letter denying him benefits did not set forth information about the steps to be taken in further review of the claim as required under the ERISA regulations.[4] Id. at 342. The employer simply argued that it was sufficient that his attorney possessed a copy of the Plan. Id.

The Court of Appeals found unpersuasive the argument that the knowledge of Epright's attorney was attributable to Epright. It concluded: "When a letter terminating or denying Plan benefits does not explain the proper steps for pursuing review of the termination or denial, the Plan's time bar for such a review is not triggered." Id.

The Court of Appeals took a similar position in Mirza. There, Dr. Mirza, as an assignee of a patient, submitted a claim for payment to his patient's employer's ERISA Plan. 800 F.3d at

[4] The Epright court cites 29 C.F.R. § 2560.503-1(f) (1995), the predecessor to the current 29 C.F.R. § 2560.503-1(g), which contains substantially the same requirement.

131. His claim was denied, and he proceeded through the administrative appeal process without success. Id. The letter denying his final appeal advised him of his right to bring a civil action under ERISA if he was not content with the decision. Id. However, the letter did not mention that he had one year to seek judicial review. Id. Mirza retained a lawyer before the expiration of the year, but a lawsuit was not filed until almost 19 months after receipt of the final denial letter. Id. at 131-32. The lawyer, however, had the Plan document some four months before the deadline to sue expired. Id.

The Court held that § 2560.503-1(g)(1)(iv) requires that plan administrators inform claimants of time limits for bringing a lawsuit in their notification of the adverse benefit determination. Id. at 135-36. The Court explained that the regulation must be construed "broadly and in favor of Mirza because ERISA is a remedial statute." Id. at 135.

The Court emphasized that plan administrators should not be allowed to argue that claimants were on notice of contractual deadlines or lacked reasonable diligence when the denial letter omitted the information required by the regulation. Id. at 137. Otherwise, the Court explained, plan administrators would have no reason at all to comply with their obligation to include "contractual time limits for judicial

review in benefit denial letters." Id. It recognized the reality that "claimants are much more likely to read benefit denial letters than the voluminous descriptions of their entire ERISA plans." Id.

Epright and Mirza require that benefit denial letters must include a description of the plan's review procedures, including time limitations. These decisions reject the notion that the court should make an individualized determination whether a claimant had actual or constructive knowledge of this information, if it is not included in the benefit denial letter. The thrust of these decisions as well as § 2560.503-1(g)(1)(iv) is to ensure that claimants are informed of their appellate rights including time limitations so that they can pursue their ERISA claims on the merits. The fairest and easiest way to accomplish this goal is via the benefit denial letter, the document claimants are most likely to read.

Here, it is undisputed that neither defendant's August 4, 2021 letter nor any other communication from defendant, includes "an explanation of this Agreement's claim review procedures" and the relevant deadlines as required by our Court of Appeals, § 2560.503-1(g)(1)(iv), and the text of the Agreement itself. Under the law, including § 2560.503-1(l)(1), plaintiff may pursue her civil action without exhausting her

administrative remedies. Accordingly, the motion of defendant for summary judgment because of the failure of plaintiff to exhaust her administrative remedies will be denied.

IV

Defendant also argues it is entitled to summary judgment because plaintiff did not execute and deliver a release, a condition precedent to her entitlement to severance payments. See Agreement §§ 5.1(a), 5.2, Exhibit B. This argument is without merit. Plaintiff has produced evidence that she resigned for good reason and was improperly denied severance benefits. If proven, plaintiff had no obligation to sign a release. See Restatement (Second) of Contracts, §§ 253(2).

V

The essence of this action on the merits is whether plaintiff terminated her employment for good reason. The Agreement states that "[plaintiff] shall serve as Office Manager and Accountant of the Company . . . [and] agrees to undertake the duties and responsibilities inherit in such position." Agreement § 2, ECF Doc. # 95-4. The Agreement further provides that "'good reason' . . . means . . . a material and unreasonable diminution in Employee's duties, authority, or responsibility under this Agreement without the consent of Employee." Agreement § 5.2, ECF Doc. # 95-4. If she terminated

her employment for good reason, she is entitled to severance payments. Agreement § 5.2, ECF Doc. # 95-4.

There are genuine disputes of material fact as to whether plaintiff terminated her employment for good reason and is therefore entitled to severance payments. Neither party is entitled to summary judgment under Rule 56. Since the parties have waived their right to trial by jury, the court will schedule a bench trial where, unlike the constraints in the summary judgement setting, contested facts can be resolved and credibility determinations made.